IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHAROLETTE BARNETT                    :

                                      :

    v.                                :    Civil Action No. DKC 10-2681

UNIFORMED SERVICES UNIVERSITY         :
OF THE HEALTH SCIENCES, et al.
                                      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is the motion to dismiss or, in the alternative, for summary judgment, filed by Defendant Uniformed Services University of the Health Sciences ("USUHS") (ECF No. 15) and the motion to strike filed by Plaintiff Charolette Barnett (ECF No. 18). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing deemed necessary. For the reasons that follow, Defendant's motion will be granted in part and denied in part. Plaintiff's motion to strike will be granted.

I.  **Background**

    A.  **Factual Background**

    The following facts are set forth in the complaint unless otherwise indicated. (ECF No. 1). Defendant USUHS is a medical school and research facility operating under the United States

Department of Defense in Maryland. Defendant Corbin Company ("Corbin") is a Virginia corporation operating in Maryland that contracts with USUHS to provide personnel and business support services. (*Id.* ¶¶ 4-5).

Plaintiff Charolette Barnett began working in September 2006 as a secretary for USUHS in the Obstetrics & Gynecology (OBGYN) department through its contract with Corbin. Ms. Barnett received her pay, based on hours worked, and benefits through Corbin. Corbin, through its employee Rebecca Davis, also provided, received, and reviewed Ms. Barnett's timesheets and informed Ms. Barnett about changes in her employment status. (*Id.* ¶ 46). USUHS personnel interviewed, hired, and supervised Ms. Barnett. USUHS employee Annette Mitchell and doctors in the OBGYN department supervised Ms. Barnett's daily activities and assigned her specific duties and tasks. When Ms. Barnett requested sick leave, vacation leave, or additional hours on her Corbin contract, she informed Ms. Mitchell. (*Id.* ¶ 45). Further, Ms. Barnett alleges that "both Corbin and USUHS had the authority to terminate [her]." (*Id.* ¶ 47).

Ms. Barnett learned she was pregnant in August 2007 "and informed [Ms.] Mitchell of her pregnancy shortly thereafter." (*Id.* ¶ 12). Once informed, Ms. Mitchell allegedly made "demeaning and offensive remarks" about the pregnancy and

"demanded to know whether Ms. Barnett intended to continue working during her pregnancy and thereafter." (*Id.* ¶ 15). After Ms. Barnett responded that she intended to work during her pregnancy and return as soon as possible after she gave birth, Ms. Mitchell expressed disapproval of Ms. Barnett's decision. (*Id.*). Ms. Mitchell also did nothing when she overheard a coworker state that Ms. Barnett was pregnant with "demon's seed." (*Id.* ¶ 17).

Ms. Barnett continued to work despite being diagnosed with severe hyperemesis gravidarum ("hyperemesis") shortly after becoming pregnant. (*Id.* ¶¶ 18, 21). Hyperemesis is a complication of pregnancy that causes such severe nausea and vomiting that one is not able to ingest or digest food or liquids. (*Id.* ¶ 18). Ms. Barnett informed Ms. Mitchell of her condition shortly after her diagnosis. (*Id.* ¶ 19). By October 2007, Ms. Barnett's condition was so severe that she had a peripherally inserted central catheter ("PICC") placed in her arm to provide her and her baby with nutrients. (*Id.* ¶ 20). The PICC equipment was portable and "designed to allow Ms. Barnett to continue working." (*Id.*).

Shortly after the PICC line was inserted, Ms. Barnett's condition worsened to such an extent that her doctor determined that she could not return to work unless her health improved.

Ms. Barnett informed Ms. Mitchell and Ms. Davis of her condition and her intent to return to work as soon as her symptoms abated or, at the latest, after she gave birth. (*Id.* ¶¶ 22-23). Ms. Mitchell and Ms. Davis allegedly "expressed a willingness to accommodate Ms. Barnett's disability," permitted the temporary leave of absence, and assured Ms. Barnett that her position would be open as soon as she improved. (*Id.* ¶ 23). Ms. Barnett stayed in contact with USUHS and Corbin while she was on leave and worked with Ms. Davis "to apply for short-term disability benefits through Corbin's disability benefits program." (*Id.* ¶¶ 24, 25).

Ms. Barnett's condition worsened over the following months. In January 2008, Ms. Barnett's doctor placed her on mandatory bed rest for the remainder of her pregnancy. (*Id.* ¶ 26). Also, in January 2008, Corbin converted Ms. Barnett from full-time to part-time status. Ms. Davis assured Ms. Barnett that she would be reinstated to full-time employment as soon as Ms. Barnett returned to work. (*Id.* ¶¶ 28, 29). Ms. Mitchell made similar assurances. (*Id.* ¶ 27). Because Ms. Barnett was converted to a part-time employee, her Corbin-sponsored health insurance was cut off and she was "forced to apply for state-funded health insurance and switch health care providers in the middle of her high-risk pregnancy." (*Id.* ¶¶ 29, 30).

On April 9, 2008, Corbin sent a letter to Ms. Barnett "stating that her last day of employment with Corbin had been October 26, 2007." (*Id.* ¶ 33). In addition, the letter stated that Ms. Barnett's former position had been filled by a new hire in March 2008. (*Id.*). Ms. Barnett alleges that the individual hired by Corbin and USUHS to replace her did not suffer from a disability and was not pregnant. (*Id.* ¶ 34).

Ms. Barnett alleges that in September 2008 she applied for a secretary position just like the one she had previously held with USUHS. (*Id.* ¶ 37). When Ms. Barnett called Ms. Mitchell to follow up on the application, Ms. Mitchell stated that "she was reluctant to even consider Ms. Barnett for the job because of Ms. Barnett's disability and the complications presented by Ms. Barnett's need for childcare for her young children." (*Id.* ¶ 38). Ms. Barnett learned that she was not selected for the position some time later. (*Id.* ¶ 40).

**B.    Procedural Background**

Ms. Barnett initially filed a charge of discrimination against Corbin with the Equal Employment Opportunity Commission ("EEOC") and the Office of Human Rights of Montgomery County, Maryland on October 7, 2008. (*Id.* ¶ 48). Ms. Barnett did not file a charge of discrimination against USUHS with the USUHS EEOC office until March 26, 2009. According to Ms. Barnett,

USUHS never notified her of the process of filing a discrimination charge. She did, however, file a charge in March 2009, shortly after learning she could do so. (*Id.* ¶¶ 48, 49). Ms. Barnett also amended her original EEOC complaint to include USUHS as a respondent on May 21, 2009. (*Id.* ¶ 49). Ms. Barnett received a right to sue letter for her first EEOC complaint on June 30, 2010, and a Final Agency Decision for her second EEOC complaint on July 12, 2010. (*Id.* ¶¶ 51, 52).

Ms. Barnett filed a complaint with this court on September 27, 2010, against USUHS and Corbin, alleging: discriminatory termination, refusal to hire, and conversion from full-time to part-time status in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"); discriminatory termination, refusal to hire, and failure to accommodate in violation of the Rehabilitation Act, 29 U.S.C. § 504, and; discriminatory termination and conversion from full-time to part-time status in violation of the Americans with Disabilities Act, 42 U.S.C. § 12131 ("ADA"). USUHS filed the instant motion to dismiss, or in the alternative, motion for summary judgment on February 18, 2011, prior to discovery. (ECF No. 15). Corbin also filed an answer to Ms. Barnett's complaint on February 18, 2011, (ECF No. 14), and Ms. Barnett

now moves to strike one of Corbin's affirmative defenses. (ECF No. 18).

## II. Motion to Dismiss

USUHS has moved to dismiss or, in the alternative, for summary judgment. Ms. Barnett submitted an affidavit pursuant to Fed.R.Civ.P. 56(d) indicating that USUHS' motion for summary judgment is premature and that discovery is necessary before she can adequately respond to the motion. (ECF No. 21-1).

As a general matter, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to the motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). The non-movant must make it clear to the court that more discovery is needed pursuant to Rule 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion." "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[(d)] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (internal quotation marks omitted). Rule 56(d) allows a court

to deny summary judgment or delay ruling on the motion until discovery is conducted if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

Here, Ms. Barnett has asserted that she is "unable to adequately respond to Defendant's [m]otion due to a lack of discovery regarding several issues," including, but not limited to circumstances surrounding her termination, information about the qualifications and status of her replacement, Defendants' leave policies and how they were applied to other employees, and reasons why Defendants ultimately did not accommodate Ms. Barnett. (ECF No. 21-1, at 2-4). Further, Ms. Barnett asserts that she was not able to question witnesses adequately, serve document requests, or subpoena third parties for document requests during the administrative proceedings. (*Id.* ¶¶ 11-14). Ms. Barnett also listed the types of discovery she believes must be conducted before she can adequately respond to USUHS' factual allegations. (*Id.* ¶ 17).

Because Ms. Barnett's affidavit identifies discovery needs relevant to some but not all of USUHS' arguments, a decision to review the entirety of USUHS' motion under the 12(b)(6) standard would be inexact and might unduly prolong the litigation.

Instead the court will determine on a claim by claim basis which standard to apply.

###    A.    Standard of Review for Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134

(4th Cir. 1993)).  In evaluating the complaint, the court need not accept unsupported legal allegations.  *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

**B.    Standard of Review for Motion for Summary Judgment**

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may

reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

**C.   Analysis**

USUHS first argues that Ms. Barnett's complaint should be dismissed because she failed to exhaust her administrative

remedies with regard to many of her claims.[1] Second, USUHS argues that Ms. Barnett's claims against USUHS should be dismissed because USUHS was not her employer at the time of the alleged discriminatory actions. Finally, USUHS argues that Ms. Barnett's claims fail on their merits.

## 1. Administrative Exhaustion

USUHS contends that because Ms. Barnett did not contact an EEOC counselor within forty-five days of USUHS' alleged discriminatory acts, as required by 29 C.F.R. § 1614.105(a)(1), this court should dismiss her discriminatory termination and failure to accommodate claims under Title VII and the Rehabilitation Act against USUHS.[2]

---

[1] USUHS also argues that Ms. Barnett's refusal to hire claim should be dismissed for failure to exhaust administrative remedies because the rejection notice she received regarding the OB/GYN position (ECF No. 1 ¶ 40) was actually a rejection regarding a position she applied to with the Armed Forces Research Institute ("AFFRI"). (ECF No. 15-1, at 21). USUHS maintains, therefore, that Ms. Barnett cannot bring a claim for refusal to hire relating to the AFFRI position. The complaint only alleges a refusal to hire claim for the OB/GYN position, however, and Ms. Barnett agrees in her opposition that this is the only refusal to hire claim she is pursuing. (*See* ECF No. 21, at 15).

[2] USUHS originally moved to dismiss these claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. This court has noted, however, that because it is "reasonably clear that a failure to exhaust administrative remedies based on untimely filings is not an issue of subject matter jurisdiction," Rule 12(b)(1) does not apply to USUHS's argument.

"[A] plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC" before initiating a civil action under Title VII or the Rehabilitation Act. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (Title VII); *see also Figueroa v. Geithner*, 711 F.Supp.2d 562, 569-70 (D.Md. 2010) (Rehabilitation Act). Prior to filing a charge of discrimination with the EEOC, a federal civilian employee has forty-five days to initiate contact with an EEO counselor after the occurrence of an employment action or matter that she believes to be discriminatory. 29 C.F.R. § 1614.105(a)(1); *Blount v. Dept. of Health & Human Servs.*, 400 F.Supp.2d 838, 840-41 (D.Md. 2004). If the matter is not resolved, the complainant may then file an EEO complaint. 29 C.F.R. § 1614.105(d). The requirement that a plaintiff timely exhaust administrative remedies, however, is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

---

*Brown v. McKesson Bioservices Corp.*, Civ. No. DKC 05-0730, 2006 WL 616021, *3 (D.Md. Mar. 10, 2006). USUHS amended its argument regarding the timeliness of Ms. Barnett's exhaustion and now argues that her failure to exhaust administrative remedies should be analyzed under Rule 12(b)(6). (ECF No. 33, at 2).

The forty-five day contact requirement must be waived when the claimant "shows that he or she was not notified of the time limits and was not otherwise aware of them[.]" 29 C.F.R. § 1614.1005(a)(2); *Jakubiak v. Perry*, 101 F.3d 23, 27 (4th Cir. 1996). Notice of the requirement "is sufficient only if it is reasonably geared to inform an employee that he must see an EEO Counselor within 45 days of the alleged discriminatory action." *Id.* (citing *Johnson v. Runyon*, 47 F.3d 911, 918 (7th Cir. 1995)).

Equitable tolling is also available to parties who have failed to satisfy administrative exhaustion requirements in "rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004)(quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)). Thus, a court may toll a requirement when a party, due to extraordinary circumstances beyond his or her control, was prevented from filing on time. *Sosa*, 364 F.3d at 512. Equitable tolling may also be appropriate "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his

adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dept. of Veterans*, 498 U.S. 89, 96 (1990). "Equitable tolling is not appropriate, however, 'where the claimant failed to exercise due diligence in preserving his legal rights.'" *Chao v. Va. Dept. of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (citing *Irwin*, 498 U.S. at 96).

Ms. Barnett asserts that because "USUHS never notified [her] of the process for filing a charge of discrimination against USUHS," she did not have notice that, as a joint employee of Corbin and USUHS, she was required to contact an EEO counselor within forty-five days. (ECF No. 1 ¶ 48; ECF No. 21, at 18). Although employers are not under an obligation to inform directly each employee of the EEO complaint process, *Karim v. Staples, Inc.*, 210 F.Supp.2d 737, 750 (D.Md. 2002), particularly when informational posters are displayed in the workplace, *Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992), Ms. Barnett has, at this stage in the litigation, sufficiently alleged that she did not have notice of the filing requirements against USUHS to survive a motion to dismiss.

USUHS moves for summary judgment on the exhaustion issue, by attaching copies of the EEO posters and a declaration detailing their placement in the office. (ECF No. 15-6.) Even considering this evidence, however, there remains a genuine

dispute of material fact as to whether the posters were reasonably geared to inform contract employees of the filing requirements.

At least two circuits have recognized that the mere presence of EEOC posters in the workplace does not constitute constructive notice to contract employees in every case. *See Harris v. Gonzales*, 488 F.3d 442, 445-46 (D.C. Cir. 2007); *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326-27 (10th Cir. 2002). In *Sizova*, the Tenth Circuit found that a genuine issue of material fact as to notice remained even though the exact wording of the posters was presented to the court because the posters did not explain that failure to contact an EEO officer within forty-five days precludes a claimant from pursuing further relief. 282 F.3d at 1327. Further, the posters were directed to persons "on the job," and it was not clear whether they were also directed to persons, such as the plaintiff, who held a fellowship and believed she worked for a university rather than the defendant technical institute. *Id.* Similarly, the copy of the poster provided by USUHS (ECF No. 15-6) does not state that an employee loses the right to relief when he or she does not meet an EEO deadline and it is unclear as to whether the poster is directed to contract employees such

16

as Ms. Barnett. Thus, summary judgment will be denied on this issue.

## 2. Joint Employer Relationship

Ms. Barnett alleges that USUHS and Corbin were her joint employers until she was terminated on April 9, 2008. (ECF No. 1 ¶¶ 33, 44-47). USUHS counters that even assuming, *arguendo*, that it was her joint employer for some period of time, it ceased to be her employer when Ms. Barnett went on leave in October 2007. (ECF No. 15-1, at 26). USUHS contends that Ms. Barnett failed to allege facts to support this allegation, but then it relies on facts contained only in declarations submitted as exhibits to its motion for support. Barnett's affidavit pursuant to Fed.R.Civ.P. 56(d) specifically notes her desire to obtain discovery from USUHS and Corbin concerning the personnel contract between the two entities and their treatment of joint employees with respect to hiring and termination procedures. (ECF No. 21-1 ¶¶ 17(a)(ix) and 17(b)). Accordingly this issue must be reviewed under the motion to dismiss standard and USUHS' extrinsic evidence will not be considered.

The test to ascertain an employment relationship focuses on the employer's right to control the "employee." *Garrett v. Phillip Mills, Inc.*, 721 F.2d 979, 982 (4th Cir. 1983). Control,

however, is not dispositive of the issue, and the court may also consider:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Garrett*, 721 F.2d at 982 (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C. Cir. 1979)).

Here, Ms. Barnett sufficiently pleaded that USUHS, in addition to Corbin, was her employer for the purposes of her Title VII and Rehabilitation Act claims. Although Corbin "paid Ms. Barnett's salary and provided her employment benefits," Ms. Barnett's daily activities were supervised and directed exclusively by USUHS employees. (ECF No. 1 ¶¶ 45–46). Ms. Barnett also alleged that USUHS interviewed and hired Ms. Barnett, furnished her workspace and "all of the tools,

18

materials and equipment that Ms. Barnett used," and "created the procedures Ms. Barnett followed in performing her job." (*Id.* ¶ 45). Ms. Barnett has alleged that USUHS exercised substantial control over Ms. Barnett's activities, and, thus, an employment relationship between USUHS and Ms. Barnett.

USUHS contends that its employment relationship with Ms. Barnett concluded on October 27, 2007, because its control over her day-to-day activities ceased when she went on leave due to complications from her pregnancy. Thus, according to USUHS, it was not her employer at the time when Ms. Barnett alleges she was terminated and denied a reasonable accommodation. (ECF No. 15-1, at 27-28). Ms. Barnett, however, alleges that Ms. Mitchell, a USUHS employee, "continued to exercise her supervisory duties monitoring Ms. Barnett's status after she went out on leave," (ECF No. 21, at 24), and repeatedly "assured [Ms. Barnett] that her position would be waiting for her when she returned" when Ms. Barnett updated Ms. Mitchell of her worsening condition. (ECF No. 1 ¶¶ 23, 26, 27, 32). Construing these allegations in a light most favorable to Ms. Barnett, she has sufficiently alleged that her employment relationship with USUHS continued beyond October 2007.

3.  **Violation of Title VII**

a.  **Discriminatory Termination**

In count I Ms. Barnett alleges that USUHS terminated her because she was a woman and pregnant in violation of Title VII. In order to establish a claim for discriminatory termination, a plaintiff must allege facts to show that: "(1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). USUHS' primary argument for dismissal of this count is that USUHS was no longer Ms. Barnett's employer at the time of her termination. In light of the foregoing analysis finding that Ms. Barnett sufficiently alleged a joint employer relationship, this count will not be dismissed.

In seeking summary judgment on this claim, however, USUHS provides evidence that the decision to terminate Ms. Barnett is not attributable to USUHS. In particular, USUHS points to the affidavit from Ms. Mitchell averring that she had no knowledge of the termination letter and played no role in Corbin's decision to terminate. (ECF No. 15-4, Report of Investigation

Ex. F-3, at 79 Bates USA000098). An additional declaration from Ms. Mitchell attached to USUHS' motion states that Ms. Barnett was replaced initially by a female contract employee and subsequently by a female permanent federal employee. (ECF No. 15-8, Mitchell Decl. ¶ 8). In addition USUHS argues that there is no evidence that it demonstrated any animus towards Ms. Barnett on account of her gender or pregnancy. (ECF No. 15-1, at 46).

Ms. Barnett contends in response that she has not had an opportunity to conduct discovery relating to USUHS' factual allegations and thus the motion is premature. (ECF No. 21, at 24). In this regard, Ms. Barnett's Rule 56(d) affidavit identifies her desire to serve discovery asking for factual information about the timing and reasons for the decision to terminate Plaintiff, the role of USUHS in that decision, and the qualifications and pregnancy-status of her replacements. (ECF No. 21-1 ¶ 10). Ms. Barnett further memorializes her intent to serve discovery requests seeking production of "any and all communications and documents concerning Plaintiff's termination" and "any and all communications concerning the decisions to hire [Ms. Barnett's replacements]" and her intent to depose Ms. Mitchell and a designee of USUHS. (*Id.* ¶¶ 17(a)(iv)-(v), 17(b), 17(c)).

Summary judgment as to count I will be denied at this time. Ms. Barnett's Rule 56(d) affidavit identifies with particularity her discovery needs relevant to this count and the evidence submitted by USUHS does not foreclose the possibility that an individual other than Ms. Mitchell played a role in Ms. Barnett's termination and may have had discriminatory motives.

**b.  Refusal To Hire**

In count II Ms. Barnett alleges that USUHS refused to hire her on the basis of her gender in violation of Title VII.  To state a claim of discriminatory refusal to hire based on gender a plaintiff must allege facts that if true would establish that: (1) she is a member of a protected category; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination.  *Brown v. McLean,* 159 F.3d 898, 902 (4th Cir. 1998) (citing *McDonnell Douglas,* 411 U.S. at 802; *Alvarado v. Bd. of Trs. of Montgomery Cmty. College,* 928 F.2d 118, 121 (4th Cir. 1991)).

USUHS argues that the claim should be dismissed because (1) Ms. Barnett never applied for an OB/GYN position in 2008, (2) she was not qualified for such a position, and (3) the official that Ms. Barnett alleges made the discriminatory decision had no role in her non-selection.  These arguments all

rely on evidence extrinsic to the complaint and can only be considered if the claim is reviewed under the summary judgment standard. Although Ms. Barnett maintains that she needs discovery before she can fully respond to USUHS' fact-based arguments, in her Rule 56(d) affidavit the only needed discovery she identifies relevant to this claim is "any and all documents and communications concerning Plaintiff's application for an OB/GYN secretary position in 2008." (ECF No. 21-1 ¶ 17(a)(vii)). While it is logical that USUHS would have documents regarding Ms. Barnett's application in addition to documents submitted by Ms. Barnett herself, one would also expect Ms. Barnett to have access to her actual application and to have personal knowledge of the steps she took to apply for the OB-GYN position. Yet, in response to USUHS' claim, Ms. Barnett relies only on her broad argument that the motion is premature before discovery and she has not submitted any documentary evidence or an affidavit detailing the steps she took to apply for the OB/GYN position. Because Ms. Barnett has not established that additional discovery is needed to enable her to prove that she applied for the OB/GYN position in 2008, this claim will be considered under the summary judgment standard.

Although Ms. Barnett has alleged that she applied for a secretary position with USUHS in September 2008 (ECF No. 1 ¶¶ 10, 37), she offers no evidence in support of this allegation. Meanwhile, the evidence submitted by USUHS shows that there was no job announcement for an OB/GYN secretary in 2008 for which Ms. Barnett could have applied. As the declaration of Amy Knapp, Head of the Staffing Division of the Navy Human Resources Service Center, states, no specific job announcement for the USUHS OB/GYN secretary position was advertised in 2008. Instead the position was filled from the pool of applicants who had applied through the Open Continuous Announcement (OCA) program. (ECF No. 15-9, Knapp Declaration ¶¶ 5-6). OCAs are announcements for certain, frequently needed, general positions that are posted when it is anticipated that there will be numerous vacancies for certain specialties. (*Id.* ¶¶ 2-3). Anyone with eligible federal status may apply under the announcement and when his or her basic qualifications and eligibility match the requirements for a specific position his or her application will be passed on to the relevant hiring official. (*Id.* ¶¶ 3-4). This was the process utilized to fill the OB-GYN secretary opening at USUHS in 2008. Although Ms. Barnett had submitted an OCA application earlier that year, she did not have eligible federal status and was therefore not

qualified to enter the OCA pool.  As a result, her application was never passed on to Ms. Mitchell and she was not a part of the applicant pool.  Because Ms. Barnett cannot be said to have applied for the specific position that is the basis of her refusal to hire claim, judgment will be entered for USUHS on count II.

### 4.  Violation of the Rehabilitation Act

Counts III and IV allege discriminatory termination, denial of a reasonable accommodation, and refusal to hire in violation of section 504 of the Rehabilitation Act, *as amended*, 29 U.S.C. § 794.  USUHS argues that Ms. Barnett's Rehabilitation Act claims fail first because she was not a "qualified individual with a disability." (ECF No. 15-1 at 31-35).  USUHS also argues that Ms. Barnett's failure to accommodate claim fails because she did not request an accommodation from USUHS and because the request was unreasonable.  (*Id.* at 35-41).  Finally, USUHS contends that Ms. Barnett's claims of discrimination based on disability cannot be sustained because she fails to demonstrate USUHS acted with discriminatory animus.  (*Id.* at 42-43).  Because all of Ms. Barnett's Rehabilitation Act claims require her to establish that she was a qualified individual with a disability, this issue will be addressed first.

### a. Qualified Individual With a Disability

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794. Both parties assumed for the purposes of their arguments that Ms. Barnett was disabled. An analysis of this element is therefore inappropriate at this stage, but at some future point Ms. Barnett will need to establish that the complications of her pregnancy were of sufficient duration to constitute a disability under the Rehabilitation Act or the ADA. The parties' current dispute focuses on whether Ms. Barnett was qualified, i.e., could she perform the essential functions of her job with or without a reasonable accommodation. USUHS' argument relies primarily on the facts as alleged in Ms. Barnett's complaint, but it does include some facts from the declaration of Ms. Mitchell as to the specific duties of the OB/GYN position. Although these additional facts add little to the analysis and are not essential to the court's decision, they are referenced in the discussion below because Ms. Barnett has personal

knowledge of what her job duties were and could have disputed Ms. Mitchell's statement with an affidavit if she desired.

An "essential function" of a job "means the fundamental job duties of the employment position the individual with a disability holds or desires," 29 C.F.R. § 1630.2(n)(1), which "bear[s] more than a marginal relationship to the job at issue." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 2004). Generally, "[a] regular and reliable level of attendance is a necessary element of most jobs." *Tangires v. Johns Hopkins Hosp.*, 79 F.Supp.2d 587, 600 (D.Md. 2000) (citing *Tyndall*, 31 F.3d at 213). "[W]hile perfect attendance is not a necessary element of all jobs, reasonably regular and predictable attendance is necessary for many." *Walders v. Garrett*, 765 F.Supp. 303, 309 (E.D.Va. 1991).

If a reasonable accommodation enables an employee to perform the essential functions of his or her job presently or in the immediate future, then the employee may be considered qualified within the meaning of the statute. *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). In determining whether a proposed accommodation is reasonable, a court examines "whether the accommodation: (1) would be 'effective,' i.e., would it address the job-related difficulties presented by the employee's disability . . . ; and (2) would allow the employee to attain an

27

'equal' level of achievement, opportunity and participation, that a non-disabled individual in the same position would be able to achieve [.]" *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F.Supp. 720, 736 (D.Md. 1996) (citing 29 C.F.R. § 1630.2(o)); *see also Tyndall*, 31 F.3d at 213. In the preliminary stages of litigation, an employee "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." *U.S. Airways v. Barnett*, 535 U.S. 391, 401 (2002).

Permitting the use of accrued paid leave or unpaid leave to obtain medical treatment may constitute a reasonable accommodation. 29 C.F.R. Pt. 1630, App.; *Hudson v. MCI Telecomm'ns Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996); *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 601-03 (7th Cir. 1998) (holding that request for four weeks of medical leave was not unreasonable); *Rodgers v. Lehman*, 869 F.2d 253, 259 (4th Cir. 1989) (holding that alcoholic employee should have been given the opportunity to participate in a rehabilitation program using accrued or unpaid leave, and that the defendant's refusal to allow plaintiff to use such leave was a violation of Rehabilitation Act); *Baucom v. Potter*, 225 F.Supp.2d 585, 592 (D.Md. 2002) (plaintiff's request for 2-4 weeks of medical leave for inpatient treatment not unreasonable); *Cehrs v. Ne. Ohio*

*Alzheimer's Research Center*, 155 F.3d 775, 782-83 (6th Cir. 1998) (finding genuine issue of fact existed as to whether granting further medical leave would have constituted a reasonable accommodation); *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 649-50 (1st Cir. 2000). Many courts have eschewed bright line rules as to when requests for medical leave are unreasonable, instead adhering to the notion that each case requires a fact specific inquiry to determine whether the requested leave is reasonable. *See, e.g., Garcia-Ayala*, 212 F.3d at 650. The Fourth Circuit has established some limits though and has held that a request for indefinite medical leave without any assurance that the employee will be able to fulfill her position's essential functions upon return is unreasonable, *Myers*, 50 F.3d at 283, as is a request for indefinite leave following a history of excessive absenteeism. *Tyndall*, 31 F.3d at 214. Similarly, other courts have found that requests for medical leaves longer than a year in duration are unreasonable. *See Corder v. Lucent Techs., Inc.*, 162 F.3d 924 (7th Cir. 1998) (plaintiff had already received forty-three weeks leave in 1991, nineteen weeks in 1992, and nine weeks in 1993 before her termination); *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222 (11th Cir. 1997) (plaintiff had received approximately ten months of leave prior to termination); *Rogers v. Int'l Marine*

*Terminals*, 87 F.3d 755 (5th Cir. 1996) (requested accommodation would have been an approximate one-year leave of absence).   In addition, courts have found that requests for extended leave were unreasonable where the plaintiff was working under time constraints or was hired primarily to perform a specific, time-sensitive task.   *See, e.g., Stubbs v. Marc Ctr.,* 950 F.Supp. 889, 894   (C.D.Ill. 1997) (holding that a one-month leave of absence was not a reasonable accommodation where plaintiff occupied a crucial management position and sought leave during a critical time of the year).

Ms. Barnett was working as a temporary contract employee for USUHS when she requested medical leave until the end of her pregnancy, a period of approximately six months.   Her temporary assignment was scheduled for completion much sooner, and indeed the task was completed by a different contract employee that was brought in to replace Ms. Barnett long before her expected return.   By their nature, temporary assignments typically need to be completed within a specific time frame.   Ms. Barnett was not a permanent employee with ongoing duties and responsibilities.   Instead, USUHS points out that at the time when Ms. Barnett ceased working, per her doctor's order, approximately four and half weeks remained on her task order. (ECF No. 15-1, at 33).   Requiring USUHS to wait six months to

30

have this task completed would be unreasonable. Additionally because another temporary worker was brought in to cover Ms. Barnett's duties for the duration of her pregnancy, there would be no position to which she could return. Under such circumstances, Ms. Barnett's requested accommodation was unreasonable.[3] As a result, Ms. Barnett cannot establish that she was a qualified individual and judgment will be granted in Defendant's favor on the Rehabilitation Act claims.

## III. Motion to Strike

### A. Standard of Review

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which gives the court discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." While it is generally accepted that a motion to strike "is neither an authorized nor proper way to procure the dismissal of all or part of" a pleading, 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 391 (3d ed. 2004), some courts have found that an untimely answer may be stricken in its entirety under certain circumstances, *see Canady v. Erbe*

---

[3] This determination does not foreclose the possibility of success on Ms. Barnett's ADA claims against Defendant Corbin because the nature of their employment relationship differed.

31

*Elektromedizin GmbH*, 307 F.Supp.2d 2, 8 (D.D.C. 2004). In any context, however, Rule 12(f) motions seek "a drastic remedy which is disfavored by the courts and infrequently granted." *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D.W.Va. 1993); *see also Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001).

## B.  Analysis

Corbin's answer asserts, *inter alia*, an affirmative defense that "Plaintiff's claims are asserted in violation of Federal Rule of Civil Procedure 11." (ECF No. 14, at 11). Ms. Barnett argues that this affirmative defense should be stricken because Corbin's allegation of a Rule 11 violation is not proper and because Corbin failed to follow the procedure required for filing a Rule 11 motion. (ECF No. 18, at 2).

Fed.R.Civ.P. 8(c) allows a party to "affirmatively state any avoidance or affirmative defense" in response to a pleading. Affirmative defenses and avoidances are defined by the Fourth Circuit as "assertion[s] raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 271 (4th Cir. 2003). Although an affirmative defense need only be "a short and plain statement," it must conform with the plausibility standard set

forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). *Bradshaw v. Hilco Receivables, LLC*, 725 F.Supp.2d 532, 537 (D.Md. 2010). Affirmative defenses are insufficient under this standard if they are stated "in a conclusory manner and fail to provide fair notice to [the plaintiff] of the factual grounds upon which they rest," and may be stricken in accordance with Fed.R.Civ.P. 12(f). *Id.* These pleading requirements ensure that the parties receive fair notice of the factual basis of any claims or defenses asserted. *Id.*

Fed.R.Civ.P. 11 provides that sanctions may be imposed on parties who allege claims for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," that are frivolous, unwarranted, or have no evidentiary support. A party seeking to impose sanctions must file a motion "separately from any other motion" and serve it under Fed.R.Civ.P. 5. *See* Fed.R.Civ.P. 12(c). The non-moving party then has twenty-one days to withdraw or correct a challenged "paper, claim, defense, contention or denial" before the motion for sanctions is filed with the court. *Id.* This twenty-one day "safe harbor provision" ensures that a party has adequate notice of the motion and sufficient time to correct or withdraw the contested assertion or denial. Because the "safe

harbor" provision of Rule 11 provides adequate notice to a non-moving party, asserting a Rule 11 violation as an affirmative defense is unnecessary. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, No. 1:00-00113, 2001 WL 1180469, at *3 (W.D.Va. Oct. 3, 2001).

Essentially, by asserting a violation of Rule 11, Corbin is challenging the truthfulness of Ms. Barnett's complaint. In contrast, an affirmative defense is a defense that, assuming the allegations in the complaint are true, would bar a claim. *Emergency One, Inc.*, 332 F.3d at 271. Thus, it does not constitute a proper affirmative defense. Because the assertion that the complaint violates Rule 11 is improperly and unnecessarily brought as an affirmative defense, it will be stricken.

## IV. Conclusion

For the foregoing reasons, the court will grant in part and deny in part the motion to dismiss or for summary judgment filed by Defendant USUHS and grant the motion to strike filed by Plaintiff. (ECF Nos. 15, 18). A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
